# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

THE CINCINNATI INSURANCE COMPANY,

     Plaintiff,

                                  Hon.

v.                                  Case No.

VILLAGE PLAZA HOLDINGS, LLC,
CAMBRIDGE REAL ESTATE, LLC,
ENDODONTICS, P.C., and
BEJJANI LAW PLLC.

     Defendants.

_____

### THE CINCINNATI INSURANCE COMPANY'S
### COMPLAINT FOR DECLARATORY JUDGMENT
### <u>AND DEMAND FOR TRIAL BY JURY</u>

Plaintiff The Cincinnati Insurance Company ("Cincinnati"), through its counsel, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, for its Complaint for Declaratory Judgment against Defendants Village Plaza Holdings, LLC ("Village Plaza"), Cambridge Real Estate, LLC ("Cambridge"), Bejjani Law PLLC ("Bejjani") and Endodontics, P.C. ("Endodontics"), states as follows:

### <u>INTRODUCTION AND NATURE OF ACTION</u>

1.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure to determine

and resolve questions of actual controversy concerning the availability and scope of insurance coverage, if any, for Village Plaza and Cambridge under a commercial general liability insurance policy and umbrella insurance policy that Cincinnati issued to Village Plaza Holdings, LLC, effective June 5, 2017 to June 5, 2018 (later defined herein as the "Policies").

2.    This action stems from two underlying lawsuits brought by tenants Bejjani and Endodontics against their landlords Village Plaza and Cambridge arising out of the parties' lease agreements for commercial space at a Building located in Dearborn, Michigan (later defined herein as "Building").

3.    More specifically, Bejjani has alleged in its lawsuit that Village Plaza terminated their lease agreement and instructed it to immediately evacuate the Building. Similarly, Endodontics has alleged in its lawsuit that Village Plaza and Cambridge wrongfully terminated their lease agreement and wrongfully initiated eviction proceedings (both underlying lawsuits are hereinafter referred to as the "Underlying Actions").

4.    Contemporaneously with the filing of this Declaratory Judgment Complaint, Cincinnati has declined coverage to Village Plaza and Cambridge for the Underlying Actions under the Policies and applicable law because,

among other reasons addressed herein, even if Village Plaza and/or Cambridge could meet the requirements of the insuring agreement in the Policies, which Cincinnati disputes that they can, insurance coverage (defense and indemnity) is expressly excluded for the Underlying Lawsuits under the Breach of Contract and Asbestos exclusions in the Policies.

5.      For these reasons, as well as the reasons more fully discussed herein, Cincinnati requests that this Court declare the rights and obligations of the parties and declare that there is no insurance coverage (defense or indemnity) available to Village Plaza and/or Cambridge under the Policies and applicable law with respect to the Underlying Actions.

## **THE PARTIES**

6.      Plaintiff Cincinnati is an insurance company incorporated in the State of Ohio, with its principal place of business in Fairfield, Ohio.

7.      Defendant Village Plaza is incorporated in the State of Michigan with its principal place of business in Dearborn, Michigan.

8.      Defendant Cambridge is incorporated in the State of Michigan with its principal place of business in Dearborn, Michigan.

9.      Defendant Bejjani is incorporated in the State of Michigan with its principal place of business in Dearborn, Michigan.  Bejjani is the plaintiff in

one of the Underlying Actions and is named as a Defendant in this action only to answer as its interests may appear.

10.     Defendant Endodontics is incorporated in the State of Michigan with its principal place of business in Dearborn, Michigan.  Endodontics is the plaintiff in one of the Underlying Actions and is named as Defendant in this action only to answer as its interests may appear.

## JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the controversy is between citizens of different states and the amount in controversy exceeds the minimum jurisdictional amount of $75,000, exclusive of interest and costs.  Jurisdiction is also proper pursuant to 28 U.S.C. § 2201; particularly because this action would settle the controversy and clarify Cincinnati's obligations, if any, under the Policies, and Cincinnati's obligations, if any, are not at issue in a state court action.

12.     Venue is proper in the Eastern District of Michigan, Southern Division, pursuant to 28 U.S.C. § 1391(b)(1) because Defendants Village Plaza and Cambridge are domiciled in Dearborn, Michigan.   Interested party Defendants Endodontics and Bejjani are also domiciled in Dearborn, Michigan.

## GENERAL ALLEGATIONS

13.    Upon information and belief, in January, 2018, a water pipe burst resulting in damage at a building owned by Village Plaza and/or Cambridge located at 23400 Michigan Avenue, Dearborn, Michigan ("the Building"). Village Plaza and Cambridge submitted their claim for insurance coverage to Cincinnati under a property insurance policy that was also issued by Cincinnati.

14.    Upon information and belief, during Cincinnati's investigation of the water damage claim, asbestos was found at the Building.  (2/15/2018 Letter; **Exhibit A**).   Cincinnati is currently adjusting Village Plaza and Cambridge's request for insurance coverage for the water damage and asbestos under the Cincinnati property policy.  The Cincinnati property policy and claim are **not** at issue in this Complaint for Declaratory Judgment.

15.    By way of letter dated February 15, 2018, Village Plaza and Cambridge notified Building tenant Endodontics, and upon information and belief, Bejjani as well, that asbestos was observed at the Building, that remedial efforts would need to be undertaken to clean the affected areas and that they were "going to terminate the lease and you will be released from future obligations under it."  (2/15/18 Letter; **Exhibit A**).

16.    By way of letter dated March 1, 2018, Cincinnati notified Village Plaza that in the event of potential claims by tenants of the Building or others "due to the possible exposure of asbestos," the Policies contain asbestos exclusions which preclude coverage.  (3/1/18 Letter; **Exhibit B**, p. 4).

17.    By way of letter to counsel for Village Plaza and Cambridge dated May 1, 2018, counsel for Endodontics stated that removing Endodontics from the Building would result in a breach of its lease, and requested that Village Plaza "not perform any act that would create a risk of asbestos exposure or any other endangerment," or would cause Endodontics to have to vacate the Building ("the May 1, 2018 letter").  (5/1/18 Letter; **Exhibit C**).

18.    Village Plaza and Cambridge forwarded the May 1, 2018 letter to Cincinnati and requested that Cincinnati provide coverage for the May 1, 2018 letter, as well as other similar letters from other tenants in the Building, under the Policies.

19.    Cincinnati issued a reservation of rights letter to Village Plaza and Cambridge dated May 14, 2018, stating that the letters from tenants, including the May 1, 2018 letter, did not constitute "suits" for which a defense would be owed under the Policies, and moreover, that several terms and exclusions in the Policies may apply to preclude coverage.  (5/14/18 Letter; **Exhibit D**).

20.     On May 15, 2018, Village Plaza and Cambridge filed a Notice to Quit to Recover Possession of Property against Endodontics, which provides, in part, that Endodontics "must move by June 15, 2018 or your landlord/landlady may take you to court to evict you."  (Notice to Quit; **Exhibit E**).

21.     At no time during Cincinnati's investigation of the property damage claim, or during its investigation of the tenants' letters, including the May 1, 2018 letter, did Cincinnati representatives tell Village Plaza and/or Cambridge that it must terminate its leases and evict its tenants of the Building.  (*See*, *e.g.*, 3/1/18 Letter; **Exhibit B**; 5/14/18 Letter; **Exhibit D**).

## The Bejjani Lawsuit

22.     On or about May 17, 2018, Bejjani filed a complaint against Village Plaza bearing Case No. 181827326GC and captioned *Bejjani Law PLLC, v. Village Plaza Holdings, LLC*, pending in the 19th Judicial District Court for the State of Michigan ("Bejjani Lawsuit").  (Complaint in Bejjani Lawsuit; **Exhibit F**).

23.     Upon information and belief, Village Plaza was served with the Bejjani Lawsuit on June 26, 2018.

24.     The Bejjani Lawsuit contains three counts:  Count One – Breach of Contract, Count Two – Unjust Enrichment and Count Three – Failure to Return Security Deposit.  (**Exhibit F**, pp. 2-3).

25.     The Bejjani Lawsuit alleges that Bejjani and Village Plaza have a lease agreement that does not expire until May 31, 2019.  (**Exhibit F**, ¶ 9).

26.     The Bejjani Lawsuit alleges that "[o]n February 16, 2018, [Village Plaza] terminated the Agreement and instructed [Bejjani] to immediately evacuate its building."  (**Exhibit F**, ¶ 10).

27.     The Bejjani Lawsuit alleges that Bejjani "evacuated the Unit, removed its property, and relocated its business" on February 22, 2018. (**Exhibit F**, ¶ 11).

28.     The Bejjani Lawsuit alleges that "[Village Plaza] breached the Agreement by failing to allow [Bejjani] to rent its Unit until May 31, 2019[,]" and "failed to perform its obligations as specified under the Agreement." (**Exhibit F**, ¶¶ 12, 14).

29.     The Bejjani Lawsuit alleges that during the term of the lease agreement, Bejjani "made substantial improvements to the rented Unit[]," "incurred several expenditures from these improvements[]," and that Village

8

Plaza "has been unjustly enriched from [Bejjani's] improvements to its property." (**Exhibit F**, ¶ 18-19, 22).

30.     The Bejjani Lawsuit alleges that Bejjani "gave [Village Plaza] a security deposit upon the execution of the Agreement[]" and that Village Plaza failed to timely return the security deposit pursuant to the lease agreement and Michigan law.  (**Exhibit F**, pp. 3-4).

31.     The Bejjani Lawsuit requests a judgment against Village Plaza in the amount of $25,000.00 plus interest, costs and attorney fees.

32.     On June 26, 2018, Village Plaza forwarded the Bejjani Lawsuit to Cincinnati and requested a defense for Village Plaza against the allegations in the complaint.

33.     Contemporaneously with the filing of this Declaratory Judgment Complaint, Cincinnati declined insurance coverage (defense and indemnity) to Village Plaza for the allegations against it in the Bejjani Lawsuit under the Policies and applicable law.

## The Endodontics Lawsuit

34.    On or about June 12, 2018, Village Plaza and Cambridge were provided a copy of a complaint filed against both Village Plaza and Cambridge, bearing Case No. 18-006593-CB and captioned *Endodontics, P.C. v. Village Plaza Holdings, LLC and Cambridge Real Estate, LLC*, pending in Wayne County Circuit Court for the State of Michigan ("Endodontics Lawsuit").  (Complaint in Endodontics Lawsuit; **Exhibit G**).

35.    Upon information and belief, Village Plaza and Cambridge were served with the Endodontics Lawsuit on June 26, 2018.

36.    The Endodontics Lawsuit alleges that "Endodontics has a valid lease with Defendants [Village Plaza and Cambridge], is current under its obligations, and has the right to the leased premises for approximately two more years."  (**Exhibit G**, ¶ 1).

37.    The Endodontics Lawsuit alleges that "Defendants have harassed Endodontics for months, threatened to shut off all power and other services to the … [b]uilding, told Endodontics to cease its business activities', and have now wrongfully issued Endodontics an eviction notice."  (**Exhibit G**, ¶ 1).

38.    The Endodontics Lawsuit alleges that Village Plaza's and Cambridge's termination of their lease agreement with Endodontics in order

to "remove asbestos throughout the entire building" is a "ruse to get the tenants out" of the Building so that Defendants can "convert the building use from being completely commercial to mixed use commercial and residential." (**Exhibit G**, ¶¶ 2-3).

39.    The Endodontics Lawsuit alleges that "there is no lawful basis to terminate the lease and evict Endodontics."  (**Exhibit G**, ¶ 3).

40.    The Endodontics Lawsuit contains two counts: Count I – Breach of Lease and Count II – Violation of the Anti-Lockout Statute (MCL 600.2918(2)(f)).  (**Exhibit G**, pp. 9-10).

41.    Count I – Breach of Lease in the Endodontics Lawsuit provides, in part, "Defendants breached by unilaterally declaring that the lease was terminated and attempting to evict Endodontics with no notice, threatening to shut down all essential services in the building, informing Endodontics informally that it should stop scheduling patients, and wrongfully initiating an eviction proceeding."  (**Exhibit G**, ¶ 48).

42.    Count II – Violation of the Anti-Lockout Statute in the Endodontics Lawsuit provides, in part, that "Endodontics is in lawful possession of [the leased space] in Village Plaza under the Lease," "Defendants are obligated to provide essential services," "Defendants are not permitted to interfere with

Endodontics possessory interest," and that "Defendants have wrongfully and unlawfully issued an eviction notice." (**Exhibit G**, ¶¶ 52 -56).

43.     The Endodontics Lawsuit seeks injunctive relief, prohibition from Village Plaza and Cambridge's further breach of the lease agreement with Endodontics, and money damages.

44.     On June 12, 2018, the same day that the complaint was filed in the Endodontics Lawsuit, counsel for Village Plaza and Cambridge forwarded the complaint to Cincinnati and requested a defense for Village Plaza and Cambridge against the allegations in the complaint.

45.     Contemporaneously with the filing of this Declaratory Judgment Complaint, Cincinnati declined insurance coverage (defense and indemnity) to Village Plaza and Cambridge for the allegations against them in the Underlying Actions under the Policies and applicable law.

## The Policies

46.     Cincinnati issued Commercial General Liability policy EPP 044 13 76, effective June 5, 2017 to June 5, 2018, to Village Plaza Holdings, LLC ("GL Policy").  (**Exhibit H,** certified copy of GL Policy and Umbrella Policy).

47.     The GL Policy provides in pertinent part as follows:

## SECTION I – COVERAGES

***

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

***

    **b.**    This insurance applies to "personal and advertising injury" only if:

        **(1)**    The "personal and advertising injury" is caused by an offense arising out of your business; and

        **(2)**    The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period.

***

**2.     Exclusions**

This insurance does not apply to:

    **a.**    **Knowing Violation of Rights of Another**

13

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\*\*\*

**f.**   **Breach of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

\*\*\*

**p.**   **Asbestos**
"Personal and advertising injury" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

\*\*\*

**SECTION V – DEFINITIONS**

\*\*\*

**17.**   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**   False arrest, detention or imprisonment;
**b.**   Malicious prosecution;
**c.**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
**d.**   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
**e.**   Oral or written publication, in any manner, of material that violates a person's right of privacy;

14

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

***

48. Cincinnati also issued Umbrella Liability policy EPP 044 13 76, effective June 5, 2017 to June 5, 2018 to Village Plaza Holdings, LLC ("Umbrella Policy").  (Umbrella Policy; **Exhibit H**).

49. The GL Policy and Umbrella Policy are collectively referred to herein as the Policies.

50. The Umbrella Policy provides in pertinent part as follows:

**SECTION I – COVERAGE**

**A.  Insuring Agreement**

**1.** We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

  a. Which is in excess of the "underlying insurance"; or

  b. Which is either excluded or not insured by "underlying insurance".

**2.** This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

  a. The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

15

b.    The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or

c.    The "personal and advertising injury" results from an "occurrence" that takes place during the policy period shown in the Declarations.

***

## B. Exclusions

This insurance does not apply to:

### 1.    Asbestos

Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

### 2.    Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights

"Personal and advertising injury":

a.    Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

***

d.    Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

***

## C. Defense and Supplementary Payments

1.    We will have the right and duty to defend the insured against any "suit" seeking damages because of "bodily injury", "personal and advertising injury" or "property

16

damage" to which this insurance applies.  We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any claim or "suit" that may result when:

a.  The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

b.  Damages are sought for "bodily injury", "personal and advertising injury" or "property damage" which are not covered by "underlying insurance" or other insurance."

*\*\**

## SECTION V – DEFINITIONS

*\*\**

16.  "Occurrence" means:

a.  An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

b.  An offense that results in "personal and advertising injury".

All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:

(1) The frequency of repetition;
(2) The number or kind of media used; or
(3) The number of claimants.

17.  "Personal and advertising injury" means injury, including "bodily injury", arising out of one or more of the following offenses:

a.   False arrest, detention or imprisonment;
b.   Malicious prosecution;
c.   Abuse of process;
d.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
e.    Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
f.    Oral or written publication, in any manner, of material that violates a person's right of privacy;
g.    The use of another's advertising idea in your "advertisement";
h.    Infringing upon another's copyright, trade dress or slogan in your "advertisement; or
i.    Discrimination, unless insurance coverage therefor is prohibited by law or statute.

***

24.   "Ultimate net loss" means the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise.  "Ultimate net loss" does not include Defense and Supplementary Payments as described in SECTION I – COVERAGE, C. Defense and Supplementary Payments of this Coverage Part.

***

## COUNT I

## DECLARATORY JUDGMENT – NO INSURANCE COVERAGE UNDER THE GL POLICY FOR THE UNDERLYING ACTIONS

51.    Cincinnati incorporates by reference all the allegations in paragraphs 1 to 50 of this Complaint for Declaratory Judgment as if restated herein.

52.    There is a bona fide dispute and an actual controversy between Cincinnati, Village Plaza and/or Cambridge regarding whether insurance coverage (defense and indemnity) exists under the GL Policy with respect to the Underlying Actions.

53.    Cincinnati seeks a declaration from this Court that it has no insurance coverage (defense and indemnity) obligation to Village Plaza and/or Cambridge with respect to the allegations against them in the Underlying Actions under the GL Policy and applicable law.

54.    The GL Policy provides that Cincinnati will have "no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply." To the extent that the insurance afforded under the GL Policy does not apply to Village Plaza and/or Cambridge's request for coverage for the Underlying Actions,

Cincinnati has no duty to defend the Underlying Actions under the GL Policy and applicable law.

55.     The GL Policy provides that Cincinnati "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."  To the extent Village Plaza and/or Cambridge do not become legally obligated to pay damages as a result of the Underlying Actions, or the Complaints in the Underlying Actions seeks relief that is declaratory, injunctive, restitutionary or equitable, there is no insurance coverage under the GL Policy and applicable law.

56.     The GL Policy provides that Cincinnati "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."  "Personal and advertising injury" is defined, in part, as "injury … arising out of … [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."  To the extent that the allegations in the Underlying Actions do not qualify as "personal and advertising injury," as that term is defined, there is no insurance coverage under the GL Policy and applicable law.

57.     The GL Policy provides insurance coverage for "personal and advertising injury" "caused by an offense arising out of your business."   To the extent that the Underlying Actions do not seek damages because of "personal and advertising injury" "caused by an offense arising out of your business," there is no insurance coverage under the GL Policy and applicable law.

58.     The GL Policy excludes insurance coverage for "'personal and advertising injury' arising out of a breach of contract...."  To the extent that the Underlying Actions seek damages for such described "personal and advertising injury," there is no insurance coverage under the GL Policy and applicable law.

59.     More specifically, all of the allegations in the Underlying Actions arise out of Village Plaza and/or Cambridge's alleged breach of the lease agreements with Endodontics and Bejjani.  To the extent that Village Plaza and/or Cambridge meet their burden to prove they are entitled to insurance coverage under the insuring agreement of the GL Policy, which Cincinnati does not concede they can do, there is still no possibility of insurance coverage (defense or indemnity) for the Underlying Actions because all allegations arise out of a breach of a lease agreement or contract, which are

expressly, clearly and unambiguously excluded under the GL Policy and applicable law.

60.    The GL Policy excludes insurance coverage for "'personal and advertising injury' arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner." To the extent that the Underlying Actions seek damages for such described "personal and advertising injury," there is no insurance coverage under the GL Policy and applicable law.

61.    More specifically, the February 15, 2018, letter, also referenced in the Endodontics Lawsuit, states that Village Plaza and Cambridge will terminate Endodontics' lease due to the presence of asbestos at the Building. To the extent that Village Plaza and/or Cambridge are able to prove they are entitled to insurance coverage under the insuring agreement provisions of the GL Policy, which Cincinnati does not concede they can do, there is still no possibility for insurance coverage (defense or indemnity) for the Endodontics Lawsuit because any "'personal and advertising injury' arising out of, attributable to, or any way related to asbestos in any form" is expressly, clearly and unambiguously excluded under the GL Policy and applicable law.

62.     The GL Policy excludes insurance coverage for "personal and advertising injury" that is "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"  To the extent that the Underlying Actions seek damages for such described "personal and advertising injury," there is no insurance coverage under the GL Policy and applicable law.

63.     Insurance coverage is limited or excluded under the GL Policy to the extent that any other policy terms, definitions, exclusions, conditions and endorsements not specifically identified herein apply to limit coverage, in whole or in part, for the Underlying Actions.

WHEREFORE, Cincinnati seeks a declaration from this Court that there is no insurance coverage (defense or indemnity) available to Village Plaza and/or Cambridge under the GL Policy and applicable law for the Underlying Actions.

## COUNT II

### DECLARATORY JUDGMENT – NO INSURANCE COVERAGE UNDER THE UMBRELLA POLICY FOR THE UNDERLYING ACTIONS

64.     Cincinnati incorporates by reference all the allegations in paragraphs 1 to 63 of this Complaint for Declaratory Judgment as if restated herein.

65.     There is a bona fide dispute and an actual controversy between Cincinnati, Village Plaza and/or Cambridge regarding whether insurance coverage (defense and indemnity) exists under the Umbrella Policy with respect to the Underlying Actions.

66.     Cincinnati seeks a declaration from this Court that it has no insurance coverage (defense and indemnity) obligation to Village Plaza and/or Cambridge with respect to the allegations against them in the Underlying Actions under the Umbrella Policy and applicable law.

67.     The Umbrella Policy provides that Cincinnati will have "no duty to defend the insured against any 'suit' seeking damages for … 'personal and advertising injury' … to which this insurance does not apply."  To the extent that the insurance afforded under the Umbrella Policy does not apply to Village Plaza and/or Cambridge's request for coverage for the Underlying Actions, Cincinnati has no duty to defend the Underlying Actions under the Umbrella Policy and applicable law.

68.     The Umbrella Policy provides that Cincinnati "will pay on behalf of the insured the 'ultimate net loss' …."  "Ultimate net loss" means, in part, "the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance …."  To the

extent that damages alleged in the Underlying Actions do not qualify as "ultimate net loss," as that term is defined, there is no insurance coverage under the Umbrella Policy and applicable law.

69.    The Umbrella Policy provides that Cincinnati "will pay on behalf of the insured the 'ultimate net loss' which the insured is legally obligated to pay as damages ...."  To the extent that Village Plaza and/or Cambridge do not become legally obligated to pay damages as a result of the Underlying Actions, or if the relief sought is declaratory, injunctive, restitutionary or other equitable relief, there is no insurance coverage under the Umbrella Policy and applicable law.

70.    The Umbrella Policy provides that Cincinnati "will pay on behalf of the insured the 'ultimate net loss' which the insured is legally obligated to pay as damages for ... 'personal and advertising injury' ... to which this insurance applies...."  "Personal and advertising injury" is defined, in part, as "injury ... arising out of ... [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." To the extent that the allegations in the Underlying Actions do not qualify as

"personal and advertising injury," as that term is defined, there is no insurance coverage under the Umbrella Policy and applicable law.

71.    The Umbrella Policy provides that Cincinnati "will pay on behalf of the insured the 'ultimate net loss' which the insured is legally obligated to pay as damages for ... 'personal and advertising injury' ... to which this insurance applies[] [w]hich is in excess of the 'underlying insurance'; or [w]hich is either excluded or not insured by 'underlying insurance'."  To the extent that the damages sought in the Underlying Actions are not in excess of the underlying insurance or are not excluded or are insured by the underlying insurance, there is no insurance coverage under the Umbrella Policy and applicable law.

72.    The Umbrella Policy provides that "[t]his insurance applies to ... 'personal and advertising injury' only if[] [t]he ... 'personal and advertising injury' is caused by an 'occurrence' ...."  "Occurrence" is defined, in part, as "[a]n offense that results in 'personal and advertising injury.'"  To the extent that the allegations in the Underlying Actions were not caused by an "occurrence," as that term is defined, there is no insurance coverage under the Umbrella Policy and applicable law.

73.     The Umbrella Policy provides, in part, that "[a]ll damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one 'occurrence....'"  To the extent that the damages alleged in the Underlying Actions arise from the same offense, such damages shall be deemed to be one occurrence under the Umbrella Policy and applicable law.

74.     The Umbrella Policy excludes insurance coverage for "'personal and advertising injury' arising out of a breach of contract...."  To the extent that the Underlying Actions seek damages for such described "personal and advertising injury," there is no insurance coverage under the Umbrella Policy and applicable law.

75.     More specifically, all of the allegations in the Underlying Actions arise out of Village Plaza and/or Cambridge's alleged breaches of the lease agreements with Endodontics and Bejjani.  To the extent that Village Plaza and/or Cambridge are able to prove they are entitled to insurance coverage under the insuring agreement provisions of the Umbrella Policy, which Cincinnati does not concede they can do, there is still no possibility for insurance coverage (defense or indemnity) for the Underlying Actions because all allegations in the Underlying Actions arise out of a breach of a

lease agreement or contract, which are expressly, clearly and unambiguously excluded under the Umbrella Policy and applicable law.

76.    The Umbrella Policy excludes insurance coverage for "[a]ny liability arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner." To the extent that the Underlying Actions seek damages for such described "personal and advertising injury," there is no insurance coverage under the Umbrella Policy and applicable law.

77.    More specifically, the February 15, 2018 letter states Village Plaza and Cambridge will terminate Endodontics' lease due to the presence of asbestos at the Building.  To the extent that Village Plaza and/or Cambridge are able to prove they are entitled to insurance coverage under the insuring agreement provisions of the Umbrella Policy, which Cincinnati does not concede they can do, there is still no possibility for insurance coverage (defense or indemnity) for the Endodontics Lawsuit because any "'personal and advertising injury' arising out of, attributable to, or any way related to asbestos in any form" is expressly, clearly and unambiguously excluded under the Umbrella Policy and applicable law.

78.    The Umbrella Policy excludes insurance coverage for "personal and advertising injury" that is "[c]aused by or at the direction of the insured

with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"  To the extent that the Underlying Actions seek damages for such described "personal and advertising injury," there is no insurance coverage under the Umbrella Policy and applicable law.

79.    Insurance coverage is limited or excluded under the Umbrella Policy to the extent that any other policy terms, definitions, exclusions, conditions and endorsements not specifically identified herein apply to limit coverage, in whole or in part, for the Underlying Actions.

WHEREFORE, Cincinnati seeks a declaration from this Court that there is no insurance coverage (defense or indemnity) available to Defendants Village Plaza and Cambridge under the Umbrella Policy and applicable law for the Underlying Actions.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Cincinnati respectfully requests the following relief:

a.    A declaration that there is no insurance coverage (defense or indemnity) available to Village Plaza and Cambridge under the GL Policy for the Underlying Actions;

b.    A declaration that there is no insurance coverage (defense or indemnity) available to Village Plaza and Cambridge under the Umbrella Policy for the Underlying Actions; and

c.    Such other relief as this Court may deem just and appropriate.

Respectfully submitted,


*s/Lauren B. McMillen*
Lauren B. McMillen (P71054)
Stephanie A. Martin (P81710)(*admission pending in U.S. District Court for Eastern District of Michigan*)
Plunkett Cooney
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4000
(248) 901-4040 (Fax)
lmcmillen@plunkettcooney.com
smartin@plunkettcooney.com
**Attorneys for Plaintiff**

Dated: June 29, 2018

## DEMAND FOR JURY TRIAL

Plaintiff, The Cincinnati Insurance Company, through its counsel, demands a trial by jury on all issues in the above-captioned matter.

Respectfully submitted,

*s/Lauren B. McMillen*
Lauren B. McMillen (P71054)
Stephanie A. Martin (P81710)(*admission pending in U.S. District Court for Eastern District of Michigan*)
Plunkett Cooney
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4000
(248) 901-4040 (Fax)
lmcmillen@plunkettcooney.com
smartin@plunkettcooney.com
**Attorneys for Plaintiff**

Dated: June 29, 2018

Open.00391.80942.20554599-1