UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE CINCINNATI
INSURANCE COMPANY,

       Plaintiff,                              Case No. 18-12044

vs.                                           HON. MARK A. GOLDSMITH

VILLAGE PLAZA
HOLDINGS, LLC, et al.

       Defendants.
_____/

**OPINION & ORDER
DENYING CAMBRIDGE REAL ESTATE, LLC AND MICHAEL HAMAME'S
MOTION TO DISMISS (Dkt. 40)**

Plaintiff The Cincinnati Insurance Company filed this declaratory judgement action seeking to resolve whether under its insurance policies it must defend or indemnify Defendants Village Plaza Holdings, LLC, and Cambridge Real Estate, LLC, in underlying state court actions. Defendant Cambridge Real Estate, LLC, and its sole member, Defendant Michael Hamame ("Defendants") have moved to dismiss the action against them (Dkt. 40). Cincinnati filed a response to the motion (Dkt. 49), but Defendants did not file a reply brief. For the reasons discussed below, the motion is denied.[1]

### I.    BACKGROUND

The following allegations are taken as true for the purposes of the pending motion.

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

Defendants, through Village Plaza, are the owners and operators of a commercial property (the "Building") located in Dearborn, Michigan. Third Am. Compl. ("TAC") ¶¶ 7-8, 14 (Dkt. 37). In January 2018, a water pipe burst, causing significant damage to the Building and exposing asbestos on a number of floors. 2/15/18 Hamame Letter, Ex. A to TAC (Dkt. 32-2). Based on the extensive water damage, and presence of exposed asbestos, Hamame, as agent for Cambridge and Village Plaza, terminated the tenant leases. Id. Some of the tenants subsequently brought breach of contract and wrongful eviction actions against Village Plaza and Defendants in state court ("Underlying Tenant Actions"). TAC ¶¶ 2-3.

Village Plaza and Cambridge filed an insurance claim with Cincinnati under a general liability insurance policy and an umbrella insurance policy for defense or indemnity in the Underlying Tenant Actions. Id. ¶¶ 1, 73-77.[2] Cincinnati declined to defend or indemnify Defendants in the Underlying Tenant Actions. Id. ¶ 4. It appears that Cincinnati declined coverage for two reasons. The Cincinnati policies do not cover damages attributable to the policy holders, nor do the policies cover damages attributable to asbestos. Id. ¶¶ 67-80. In other words, Cincinnati declined to cover Defendants' state-court defense for breach of contract and wrongful eviction because, Cincinnati alleges, liability for those claims is attributable to Defendants' independent decision to terminate tenant leases.

Cincinnati filed the present declaratory judgment action on June 29, 2018, seeking a Court order stating that there is no insurance coverage for a defense or indemnity under the insurance policies in the Underlying Tenant Actions. Id. ¶ 5. Village Plaza and Cambridge filed an answer to the First Amended Complaint stating that insurance coverage was wrongfully denied, Answer ¶ 4 (Dkt. 18), and that Cincinnati had required Village Plaza to send the letter terminating tenant

---

[2] Insurance coverage for the damage to the Building is not in dispute in this action.

leases, id. ¶ 78.  Cambridge and Village Plaza further asserted affirmative defenses alleging that Cincinnati has a duty to defend or indemnify Cambridge and Village Plaza in the Underlying Tenant Actions, because Cincinnati required Village Plaza to terminate the tenant leases.  Id. Aff. Defs. 1, 2, 5, 8.  Based on the same alleged conduct, Village Plaza filed counterclaims against Cincinnati for tortious interference with a business relationship and breach of contract.  See id. Village Plaza Counterclaims at 15-21.  Cincinnati has amended its complaint several times and added the tenants from the Underlying Tenant Actions.  Most of the tenants have been dismissed.  However, Pioneering Inc., and American Physio, LLC, remain in the case and have also filed counterclaims against Cincinnati.  See Pioneering Answer and Counterclaims (Dkt. 45).

More than a year after Cincinnati filed the present action, Hamame and Cambridge filed a case in Wayne County against Cincinnati and IAQ Management Services, a company that evaluated the air quality of the Building.  The claims against Cincinnati are nearly identical to the counterclaims brought by Village Plaza against Cincinnati in this case.  Compare Village Plaza Counterclaims at 15-21, with Wayne County Action, Ex. A to Mot. (Dkt. 40-1).  Cambridge and Hamame now seek dismissal of this action under Federal Rule of Civil Procedure 12(b)(1) due to the Wayne County Action.

## II. STANDARD OF REVIEW

In a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the plaintiff has the burden of proving jurisdiction."  Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).  Challenges to subject-matter jurisdiction fall into two general categories: "facial attacks"—which argue that the pleading allegations are insufficient—and "factual attacks"—which challenge the factual veracity of the allegations.  United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  On a motion raising a

facial attack, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." Id. In reviewing a motion raising a factual attack, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.

The parties do not dispute that this Court has subject matter jurisdiction generally, because there is complete diversity between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332; see also TAC ¶¶ 8-9, 12. The dispute in the present motion is whether the Court should exercise its jurisdiction to entertain this declaratory judgment action. Federal courts are not obligated to exercise their jurisdiction to entertain declaratory judgment actions. Brillhart v. Excess Insurance Co. of America, 316 U.S. 491, 494 (1942) ("[a]though the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act . . . it was under no compulsion to exercise that jurisdiction"). Rather, the Declaratory Judgment Act permits the Court to exercise jurisdiction where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, (1941)).

### III. ANALYSIS

Defendants make three arguments in support of their motion: (i) the Court should decline to exercise jurisdiction under the Declaratory Judgment Act, (ii) declaratory relief could result in inconsistent opinions, and (iii) neither Cambridge nor Hamame are named insureds under the Cincinnati policies. The arguments will be addressed in turn.

**A. Declaratory Judgment Act**

Defendants argue that the Court should decline to exercise jurisdiction over this case under the Declaratory Judgment Act. Mot. at 1. That act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The exercise of jurisdiction in a declaratory judgment action is consigned to the court's discretion. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). In exercising that discretion, courts consider five factors:

(1) Whether the declaratory action would settle the controversy;

(2) Whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

(4) Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) Whether there is an alternative remedy which is better or more effective.

Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 554 (6th Cir. 2008) (citing Grand Trunk W. R.R. Co. v. Consol. Rail Co., 746 F.2d 323, 326 (6th Cir. 1984)). The Sixth Circuit has never indicated a relative weight of the factors. Id. "Instead, 'the relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." United Specialty Ins. Co. v. Cole's Place, Inc., 936 F.3d 386, 396 (6th Cir. 2019) (quoting W. World Ins. Co. v. Hoey, 773 F.3d 755, 759 (6th Cir. 2014)) (internal marks omitted).

    **1. Whether the declaratory action would settle the controversy (Factor One) and whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue (Factor Two)**

The first two Grand Trunk factors are often analyzed together, because "it is almost always

5

the case that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue." Flowers, 513 F.3d at 557 (citing Bituminous Cas. Corp. v. J & L Lumber Co., 373 F.3d 807, 814 (6th Cir. 2004), Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 454 (6th Cir. 2003)). Defendants argue that this action will neither settle the controversy nor clarify the legal relations at issue because there are factual disputes in the Wayne County Action with respect to whether Cincinnati directed Defendants to terminate tenant leases. Id. at 6-7. Cincinnati argues that resolving the factual issue in this matter resolves the controversy of whether Cincinnati must defend Hamame and Cambridge in the Underlying Tenant Actions, and it would resolve Village Plaza, Pioneering, and American Physios' counterclaims in this matter. Resp. at 15. Cincinnati has the better part of the argument.

Courts are somewhat split on whether a declaratory judgment regarding insurance coverage for third-party litigation can settle the controversy. Some courts reason that a declaratory judgment settles the controversy "because it resolves the dispute between the insurer and insured over who will pay for the state-court litigation." Cole's Place, 936 F.3d at 397, 402 (citing cases). Other courts have reasoned that a declaratory judgment does not satisfy the first Grand Trunk factor "because the ongoing state-court litigation can reach the same issues, and the insurer can be joined in that litigation or can defend against an indemnity action later brought by the state-court defendant." Id. (noting that this reasoning sometimes emphasizes the existence of difficult or fact-bound issues of state law awaiting resolution in the state-court litigation). One of the key differences between the two approaches is whether the state-court plaintiffs are joined to the declaratory judgment action. Where the state-court plaintiffs are joined to the declaratory judgment action, the Sixth Circuit has generally found that district courts did not abuse their discretion in exercising jurisdiction. See Cole's Place, 936 F.3d at 408 (White, J., dissenting). By

6

contrast, where the state-court plaintiffs were not part of the federal action, the Sixth Circuit has found exercising jurisdiction is an abuse of discretion. Id.

The first two Grand Trunk factors favor the exercise of jurisdiction. Cincinnati has joined the state-court plaintiffs to this action, ensuring that a declaratory judgment will settle the insurance coverage controversy as to all interested parties. Therefore, a declaratory judgement will settle the insurance coverage controversy, which in turn will clarify the legal relations at issue. Additionally, the underlying concerns of the Grand Trunk factors are efficiency, fairness, and federalism. Cole's Place, 936 F.3d at 396. Village Plaza and some of the state-court plaintiffs have asserted counterclaims in this action, which may turn on the resolution of the issue of whether Cincinnati directed Village Plaza to terminate its tenant leases. Although the Wayne County Action is likely to consider the same fact question—thus implicating issues of federalism—terminating this action because Hamame and Cambridge filed a state-court action a year after this case was filed would be neither efficient nor fair to the remaining parties.

Therefore, the first two Grand Trunk factors favor exercising jurisdiction.

### 2. Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata" (Factor Three)

The third factor typically does not weigh heavily in the analysis. Cole's Place, 936 F.3d at 399. However, evidence of procedural fencing has sometimes been found where it appears that a plaintiff filed a declaratory judgment action in anticipation of litigation in state court. Id. Both sides argue the other is procedurally fencing. Mot. at 7-8; Resp. at 18-19. Cincinnati again has the better part of the argument.

There is no indication that Cincinnati filed this action for any improper purpose. There was an open question of whether Village Plaza and Cambridge were entitled to an insurance

7

defense for any possible litigation arising from actions taken subsequent to the water damage to the Building.  Cincinnati had a choice to have this question resolved in state or federal court.  For reasons of its own, Cincinnati brought its action in federal court.

Defendants argue that Cincinnati filed this action in anticipation of litigation because it filed this case before Defendants filed their own, and in its complaint, Cincinnati denied directing Village Plaza and Defendants to terminate tenant leases.  Mot. at 8.  In other words, it appears that Defendants are arguing that Cincinnati was aware of the allegations that it had directed Village Plaza to terminate tenant leases, and it raced to the courthouse to gain a procedural upper hand.  Defendants' arguments are unavailing.

There is no presumption that a declaratory action filed in federal court, without more, is an act of procedural fencing.  The only additional information Defendants rely on is that Cincinnati denied ordering tenant leases to be terminated.  Defendants' argument may have had some traction if they had brought a similar action in state court within a few weeks or even a few months of this action.  Instead, Cambridge filed an answer in this action and asserted counterclaims against Cincinnati in November 2018.  Defendants litigated this action for over eight months before filing a similar action in state court, which happened to be two weeks after Cincinnati served its discovery requests on Cambridge.  See Discovery Requests, Ex. A to Resp. (Dkt. 49-1).  Defendants' actions look more like an attempt at forum shopping and delay than Cincinnati's actions look like an attempt at procedural fencing.  At best, this factor is neutral.

> 3. **Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction (Factor Four)**

"[T]he mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction."  Flowers, 513 F.3d at 560.  To make the evaluation, the

fourth factor is broken into three sub-factors:

> (1) [W]hether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Id. (quoting Bituminous, 373 F.3d at 814-815).

The firs sub-factor is neutral. The sub-factor focuses on whether the state court's resolution of a factual issue is necessary for the federal court to resolve the declaratory judgment action. Id. Here, there are two paths to resolution. The first path requires the determination of whether Cincinnati directed the termination of tenant leases, which is an issue in state court, although not in the insurance coverage context. The second path to resolving the declaratory judgment action is resolving the question regarding whether the Cincinnati policies cover actions attributed to asbestos, which is not an issue in the Wayne County Action. Therefore, as things currently sit, the resolution of whether Cincinnati directed Village Plaza to terminate tenant leases will not necessarily be the issue that resolves this action. Therefore, this sub-factor is neutral.

The second sub-factor slightly favors Defendants. The second sub-factor asks whether the state court is in a better position to resolve the factual issue. Flowers, 513 F.3d at 560. Generally, this sub-factor weighs against exercising jurisdiction where a question of state law concerning state regulated insurance contracts exists. Bituminous, 373 F.3d at 815-816. "This is not to say that a district court should always turn away a declaratory judgment action when an undetermined question of state law is presented, but it is an appropriate consideration for the court to weigh in the exercise of its discretion." Flowers, 513 F.3d at 560. The consideration has less force when

9

state law is clear and when a state court is not considering the issue. Id. The state law is clear in this type of mine-run insurance coverage case; however, while the state court is not considering the scope of insurance coverage, the state court will be considering the factual question of whether Cincinnati directed tenant leases to be terminated. This sub-factor weighs slightly in favor of declining jurisdiction.

The third sub-factor favors exercising jurisdiction. The third sub-factor addresses whether the federal action implicates important state interests, and, is therefore, better suited to be resolved in state court. Id. at 561. "The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." Bituminous, 373 F.3d at 815. However, state law and policy are not necessarily frustrated simply because a federal court applies state law. Northland, 327 F.3d at 454. For example, where, as here, the issue of insurance coverage is not before the state court, the principles of comity are not offended. Id. Although it is generally preferable to decide state law issues in state courts, the issue of insurance coverage is not before the state court. Therefore, the state court is not in a better position to decide the issue of insurance coverage, and this sub-factor weighs in favor of exercising jurisdiction.

Applying these sub-factors, the Court finds that the Fourth Factor weighs in favor of exercising jurisdiction, because the issue of insurance coverage is not being litigated in state court.

### 4. Whether there is an alternative remedy which is better or more effective (Factor Five)

The Fifth Grand Trunk factor asks "whether there is an alternative remedy which is better or more effective" than federal declaratory relief. Grand Trunk, 746 F.2d at 326. The Sixth Circuit "has sometimes found an alternative remedy is 'better' than federal declaratory relief if state law offers a declaratory remedy or if coverage issues can be litigated in state-court indemnity actions."

10

Cole's Place, 936 F.3d at 401 (citing cases). As Defendants point out, Michigan offers a declaratory remedy. See Mich. Ct. R. 2.605. On the other hand, the Sixth Circuit has also observed that even when a state court action is pending, "intervening in the state court action would not necessarily have provided a better or more effective alternative remedy" to federal court. Northland, 327 F.3d at 454. An insurance company's decision to bring a declaratory action in federal rather than state court may be due some deference. See id. ("[Plaintiff] chose for reasons of its own to have its dispute settled in federal court rather than state court."). There is no general rule on the matter. The inquiry "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." Flowers, 513 F.3d at 562.

The Fifth Factor weighs in favor of exercising jurisdiction. There was no state court case pending when Cincinnati chose to bring this action in federal court. Cincinnati could have brought its action in state court, but for reasons of its own, it brought the claim in federal court. Defendants' argument that the later filed Wayne County Action is the superior forum to litigate this matter, because state courts are in a better position to evaluate state law claims, is not persuasive where the state court action was filed more than a year after the present action. Had Defendants filed their state court action rather than answering and filing counterclaims in this action, their argument would have more force. At this point in the litigation, declining to exercise jurisdiction would needlessly delay resolution of the insurance coverage issue. Therefore, this factor favors exercising jurisdiction, because there is no better or more effective remedy available to Cincinnati at this point.

The Court finds that the Five Grand Trunk Factors favor exercising jurisdiction over this matter, because under the circumstances, there is a substantial controversy, between Defendants and Cincinnati, and the controversy is of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment.

### B. Inconsistent Opinions

Defendants argue that if the Court decides to exercise jurisdiction over this matter, there is a risk of inconsistent opinions between this Court and Wayne County. Mot. at 11 (citing Am. Home Assur. Co. v. Evans, 791 F.2d 61 (6th Cir. 1986)). In Evans, a state court action had been filed against an attorney for malpractice. 791 F.2d at 62. The attorney's insurance company determined that there was no coverage for the attorney's defense. Six months later, the plaintiff amended the complaint to include a negligence charge. The insurance company changed course and decided to provide a defense to the action with the caveat that it had the right to withdraw the defense if it was later determined that no coverage was available. Based on this development, the state court adjourned the trial eight months. Shortly before the trial was to begin, and almost a year-and-a-half after the case was filed, the insurance company filed a federal action seeking a declaratory judgment that no coverage was available, which the district court granted. Id. After considering the Grand Trunk factors, the Sixth Circuit reversed the declaratory judgment as improvidently granted. Id. 61-63. The panel explained that "[w]here complex factual issues are present and the action parallels a state court action arising from the same facts and where alternative remedies are available, declaratory judgment is inappropriate." Id. at 64 (citing cases).

Here, unlike in Evans, this action was filed well before the state court action. And this matter does not involve complex factual issues. The factual issue in this case is simply whether Cincinnati directed Village Plaza to terminate the leases of its tenants. Moreover, as Cincinnati points out, the possibility of inconsistent opinions is one of Defendants' own making. Resp. at 21-22. Cambridge, rather than file counterclaims in this case, could have filed a state court action and then moved to be dismissed from this case. It did not choose that course of action. Defendants

12

cannot now use the belated state court action as a kill switch to terminate this action because, for whatever reason, it has decided it would prefer to proceed in state court. Defendants' argument is unpersuasive.

### C. Named Insureds

Finally, Defendants argue that neither of them is a named insured under the Cincinnati policies, and, therefore, should be dismissed on that basis. Mot. at 13. Cincinnati notes that in Cambridge's answer to the complaint, Cambridge seeks a declaration stating that Cincinnati has a duty to defend it in some or all of the underlying actions. Cambridge Answer at 13. Nonetheless, Cincinnati welcomes the admission that neither Cambridge nor Hamame are covered by its policies or that they are entitled to an insurance defense. Resp. at 22. The Court will leave such negotiations to the parties.

Whether Hamame and Cambridge are named under the Cincinnati policies has no significance at this stage of the litigation. Cincinnati has alleged that it declined an insurance defense to Village Plaza and Cambridge (whose sole member is Hamame). TAC ¶ 4-8. Cambridge, in turn, has argued that it is entitled to an insurance defense under the Cincinnati policies. There is a live dispute that has been alleged that can be resolved by a declaratory judgement. Therefore, Defendants' argument that neither one of them is a named insured under the insurance contracts is without merit at the pleading stage.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. 40) is denied.

SO ORDERED.

Dated: July 22, 2020                             s/Mark A. Goldsmith
   Detroit, Michigan                         MARK A. GOLDSMITH
                                                    United States District Judge